**SO ORDERED.**

**SIGNED this 21 day of December, 2009.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

DESIGNATED FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY DEAN PHILLIPS, and | ) | Case No. 06-11573 |
| CARLA MARIE PHILLIPS, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| J. MICHAEL MORRIS, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adversary No. 08-5014 |
| | ) | |
| PHH MORTGAGE SERVICES, and | ) | |
| GARY D. PHILLIPS and CARLA M. PHILLIPS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

The chapter 7 trustee seeks to avoid the lien of PHH Mortgage Services ("PHH") in a

1

manufactured home occupied by the debtors as their homestead. The trustee contends PHH has neither perfected its security interest in the manufactured home nor "eliminated" the title to the home as provided by KAN. STAT. ANN. § 58-4214 (2005). The parties submit this matter for determination on stipulations contained in the pretrial order, stipulated exhibits, oral argument and post-argument briefs.[1] The trustee J. Michael Morris appears in person. PHH appears by its attorney Linda S. Mock.

<u>Jurisdiction</u>

The Court has subject matter jurisdiction over this core adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(K).

<u>Facts</u>

The Court's findings of fact are based on the Court's file, stipulations contained in the pretrial order[2] and additional exhibits offered at trial. Gary and Carla Phillips filed their chapter 7 case on August 25, 2006. On or about May 26, 2006, they executed and delivered a Promissory Note and Mortgage to PHH in the principal amount of $59,375.00. The Mortgage granted a lien to PHH in certain real property in Wichita, Kansas. . . "TOGETHER WITH all the improvements now or hereafter erected on the property, and all . . . fixtures now or hereafter as part of the property." (as a whole, "the Property").[3] The Mortgage was duly recorded with the Sedgwick County Register of Deeds on May 31, 2006, as Document No. 28785574. The residence located on the above described real property is a manufactured home, identified with VIN #

---

[1] Adv. Dkt. 40, 42.

[2] Adv. Dkt. 36, pp. 3-4.

[3] Ex. 1, 2.

2

XXXXXXXXXXXXXXW973.⁴ Debtors purchased the Property from the Federal National Mortgage Association, commonly known as "Fannie Mae." At the time of the purchase by debtors, title to the manufactured home was in Fannie Mae.⁵ Neither PHH nor debtors ever applied for a title to the manufactured home showing PHH as a lien holder. Nor did PHH submitted a Notice of Security Interest to the Kansas Department of Revenue (KDR).

On the petition date, the "historical" opt-out records of the KDR contained a reference to the mobile home, but also included a "stop title" annotation.⁶ No one filed a KDR-approved Application for Elimination of Title with the Sedgwick County Register of Deeds. Debtors have claimed the Property as their exempt homestead. The parties have agreed on the relative values of the land and manufactured home. The land and other improvements is 36.47% and the manufactured home is 63.53%.

The trustee offered the affidavit of Michael McLinn, an employee of the KDR's Division of Vehicles ("DOV") in lieu of live testimony.⁷ McLinn avers that a certificate of title for the manufactured home was issued to Fannie Mae and that thereafter, on June 14, 2006, the KDR "apparently" approved an elimination application as indicated by the entry on the title history: "STOP TITLE: CODE A DT 06/14/2006." McLinn states that this indicates an application was approved and the title cancelled. The actual application for elimination of title of debtors'

---

⁴ The Court observes that the vehicle identification number for the manufactured home listed in the stipulation (Adv. Dkt. 36, p. 4, ¶ H) is not identical to the VIN # shown on the title and registration records (Ex. 4, 5). Because of the result reached today, the Court ignores the slight discrepancy in the vehicle identification numbers for purposes of its decision.

⁵ Ex. 3, 4.

⁶ Ex. 5.

⁷ Ex. 10.

3

manufactured home was not produced at trial.

The Court concludes that after Fannie Mae sold the land and home to the Phillips, either the debtors or PHH submitted an application to eliminate the manufactured home's certificate of title pursuant to KAN. STAT. ANN. § 58-4214. The DOV's records suggest that it processed and approved the title elimination application, but no approved application was filed in the Sedgwick County Register of Deeds' real estate records.

<u>Analysis</u>

The Trustee invokes his strong-arm powers under § 544(a) to avoid PHH's lien. Section 544(a)(1) provides that a trustee has the same rights and powers of a hypothetical judicial lien creditor whether or not an actual like creditor exists in the case. Accordingly, the trustee may avoid an unperfected security interest or lien and, pursuant to § 551, preserve that lien for the estate's benefit. As the stipulations reflect, there is no dispute that PHH made no effort to perfect an Article Nine personal property security interest in the manufactured home by applying for a secured title as provided for in KAN. STAT. ANN. § 58-4204. Instead, PHH relies on its recorded real estate mortgage as the source of the lien encumbering the manufactured home.

At issue is the meaning and effect of KAN. STAT. ANN. § 58-4214, a provision adopted in 2002 to supplement the Kansas Manufactured Housing Act that was originally enacted in 1991.[8] In particular, the Court must determine whether the owner or lender successfully "eliminated" the certificate of title in the home. The Court has uncovered no published decisions of either the Kansas appellate courts or the federal courts sitting in Kansas that interpret this statutory provision.

---

[8] KAN. STAT. ANN. § 58-4201 *et seq.* *See also,* § 58-4216, which incorporates § 58-4214 into the Kansas Manufactured Housing Act.

As the Trustee notes, the means of perfecting security interests or liens in manufactured housing has been an ongoing topic of judicial opinions in Kansas state and federal courts for years.[9] In the past, the need to separately perfect the mobile home security interest via the certificate of title process as outlined in KAN. STAT. ANN. § 58-4204 was sometimes ignored by lenders who apparently assumed that because the home was affixed to real estate encumbered by their mortgages, the home was encumbered as well. Bankruptcy trustees have exercised their strong-arm powers to avoid and preserve liens in the homes, while leaving the real estate mortgages intact. At the behest of the manufactured housing industry in Kansas, the Kansas Legislature enacted § 58-4214 in 2002 to clarify how a lender who claims a mortgage in realty to which a mobile or manufactured home is permanently affixed may adequately perfect the lien of its mortgage in the dwelling.[10] Not until it enacted § 58-4214 did the Kansas Legislature provide a means for mobile home owners and lenders to encumber these types of homes with the same mortgage liens that encumber the land

---

[9] *See Beneficial Finance Co. of Kansas, Inc. v. Schroeder,* 12 Kan. App. 2d 150, 737 P.2d 52, *rev. denied* 241 Kan. 838 (1987) (prior to adoption of the Kansas Manufactured Housing Act, perfection of security interests in manufactured homes controlled by Kansas' motor vehicle titling statute, K.S.A. 8-135; exclusive method of perfection was by notation on the certificate of title as for motor vehicles); *Morris v. Citifinancial (In re Trible),* 290 B.R. 838 (Bankr. D. Kan. 2003) (Enactment of the Kansas Manufactured Housing Act, transferred statutory authority for perfection of security interests in manufactured homes from motor vehicles under K.S.A., Chapter 8 to Chapter 58; manner of perfection remained the same (notation of security interest on the certificate of title, K.S.A. 58-4204(g,) and is the exclusive method of perfection); *In re Thomas*, 362 B.R. 478 (10th Cir. BAP 2007) (K.S.A. § 58-4214's process for elimination of title requires the approved application to be recorded with the register of deeds and is the exclusive means to change the status of a manufactured home from personal property (K.S.A. 58-4204(a)) to a fixture); *In re Brouillette,* 389 B.R. 214 (Bankr. D. Kan. 2008) (determining if dwelling was a manufactured home or mobile home subject to titling and perfection of security interest under K.S.A. 58-4204); *In re Wedman*, 374 B.R. 819 (Bankr. D. Kan. 2007).

[10] *See* Exhibit to Dkt. 42 containing legislative history of this section. That history will be discussed in greater detail later.

where they are erected.[11]

The statute reads as follows–

**58-4214. Manufactured housing; elimination of certificate of title; requirements; real property**

(a) Whenever a manufactured home or mobile home is permanently affixed to real property, by placement upon a permanent foundation of a type not removable intact from such real property, the manufactured home or mobile home shall be considered for all purposes an improvement to real property, if the certificate of title which has been issued or is required to be issued for such manufactured home or mobile home pursuant to K.S.A. 58-4204, and amendments thereto, is eliminated pursuant to this section. If the certificate of title has been eliminated pursuant to this section, the ownership of the manufactured home or mobile home shall be an incident of ownership of the real property where it is located under governing real property law. If the certificate of title has been eliminated pursuant to this section, a separate security interest in the manufactured home or mobile home shall not exist, and the manufactured home or mobile home shall only be subject to a lien as part of the real property where it is located.

(b) To eliminate a certificate of title which has been issued or is required to be issued for a manufactured home or mobile home pursuant to K.S.A. 58-4204, and amendments thereto, the owner of the manufactured home or mobile home shall make application to the division, including submission of the following:

> (1) An affidavit, in the form prescribed by the division, signed by all the owners of the manufactured home or mobile home, and also signed by all parties having a mortgage, lien or other security interest in the manufactured home or mobile home, as evidence of consent to the elimination of the certificate of title, and containing:
>
>> (A) The date;
>> (B) the names of all the owners of record of the manufactured home or mobile home;
>> (C) the legal description of the real property where the manufactured home or mobile home is located;

(D) a description of the manufactured home or mobile home, including model year, make, width, length and identification number;

>> (E) the names of all parties holding a security interest or otherwise entitled to a lien or encumbrance in the manufactured home or mobile

---

[11] *See* Dkt. 42-1, Legislative history of § 58-4214.

6

> home;
> (F) a statement that the owner or one of the owners of the manufactured home or mobile home owns the real property where the manufactured home or mobile home is or will be located; and
> (G) the name and address of an owner, lending agency or other entity to which the approved application may be delivered;
>
> (2) the certificate of title for the manufactured home or for the mobile home issued pursuant to K.S.A. 58-4204, and amendments thereto, or in the case of a new manufactured home, the manufacturer's statement of origin;
>
> (3) where one or more parties have a security interest in the manufactured home or mobile home, a release of each such secured party's security interest;
>
> (4) proof of payment of all applicable fees and taxes; and
>
> (5) any other information the division may reasonably require pursuant to duly adopted rules and regulations.
>
> (c) The division shall approve the application for elimination of the title when all requirements of subsection (b) have been satisfied. After the application has been approved, the division shall deliver the approved application as directed by the application. The approved application shall be recorded in the office of the register of deeds of the county in which there is located the real property on which the manufactured home or mobile home is affixed. Upon such recording, the certificate of title shall be presumed to be eliminated. If a certificate of title previously has been issued for the manufactured home or mobile home pursuant to K.S.A. 58-4204, and amendments thereto, the division also shall cancel such certificate of title.[12]

KAN. STAT. ANN. § 58-4214(a) enables a mortgage lender to treat a manufactured home that is permanently affixed to real property as an improvement to real property and as an incident of ownership of the real property *"if the certificate of title . . . is eliminated pursuant to this section."*[13] Thus the landowner owns the dwelling as part of the real property. Section 58-4214(b) provides the

---

[12] KAN. STAT. ANN. § 58-4214 (2009).

[13] KAN. STAT. ANN. § 58-4214(a) [Emphasis supplied.]. The Kansas Manufactured Housing Act deems manufactured homes to be personal property, § 58-4204(a).

manner in which owners may eliminate their certificate of title to the manufactured home to effectuate § 58-4214(a). Compliance with this statute dispenses with the necessity of separately perfecting an Article Nine security interest in the manufactured home under the certificate of title statute, KAN. STAT. ANN. § 58-4204, and instead, provides for the manufactured home to be encumbered by the mortgage lien on the real property to which it is affixed by means of a recorded mortgage. Section 58-4214(a) states that once the certificate of title has been eliminated, "a separate security interest in the . . . home shall not exist, and the . . . home shall only be subject to a lien as part of the real property where it is located."[14]

Section 58-4214(b) provides that "to eliminate a certificate of title" on a manufactured home, the owner must submit the following items to the DOV: (1) a form affidavit and application containing certain enumerated information, signed by the owners and consented to by parties having a security interest in the manufactured home; (2) the certificate of title to the subject manufactured home; (3) a secured party's release of its security interest in the manufactured home; (4) proof of payment of fees and taxes; and (5) any other information required by the DOV. If all of these items enumerated in subsection (b) are submitted, the DOV "*shall* approve the application."[15]

When the application is approved and returned to the owner or lender,[16] the owner or lender "shall" record it in the register of deeds office in the county where the affected realty is situated. In that connection, subsection (c) states:

---

[14] *Id.*

[15] § 58-4214(c) [Emphasis supplied.].

[16] *Id.* ("After the application has been approved, the [DOV] shall deliver the approved application as directed by the application."). The form affidavit contains space for the name and address where the approved application is to be sent. *See e.g.,* Ex. 8 and the line, "Approved ApplicationTo Be Forwarded To:"

8

> The approved application *shall be recorded* in the office of the register of deeds of the county in which there is located the real property on which the manufactured home or mobile home is affixed. *Upon such recording*, the certificate shall be *presumed to be eliminated*.[17]

In the instant case, the DOV approved the application to eliminate the certificate, but no one ever recorded the approved application. This begs the question whether all of the steps necessary to procure an elimination of title have been taken and whether the title has been eliminated.

The Trustee argues that *recording* the approved application is required in order to eliminate the title and make the manufactured home part of the real estate for all purposes. Because the approved application was never recorded, PHH's mortgage does not encumber the manufactured home. Therefore, as a hypothetical lien creditor interest under § 544(a), the Trustee's interest in the home is superior to that of PHH.

PHH claims that once the application is approved, the title is eliminated and that failing to record the application is not fatal to its lien interest. PHH argues that once an owner or creditor has substantially complied with all of the requirements of § 58-4214(b), the title certificate is eliminated and the fact that the approved application was not recorded should not allow the Trustee to avoid its lien.

As noted previously, nothing in the stipulations or exhibits suggests who prepared the elimination application or what it contained, but as the DOV's affidavit states, the publication of a "stop code" in the Opt-out Record means that the agency "apparently" approved the application, and the Court may infer that the application was properly completed. PHH argued at trial that the DOV records containing the "stop code" notation should suffice because a searcher of "current" DOV

---

[17] KAN. STAT. ANN. § 58-4214(c) [Emphasis supplied.].

9

records would not turn up a title for this mobile home (though no evidence in the record would support that conclusion).

PHH relies heavily on the prefatory language of subsection (b) which reads in part, "[t]o eliminate a certificate of title which has been issued or which is required to be issued . . . the owner of the manufactured home . . . shall make application to the division, including submission of the following . . .," thereafter listing the various categories of documents necessary and information that the application would solicit. PHH reads that to mean that once the elimination application is completed and approved, the title is eliminated. PHH also relies on KAN. ADMIN. REG. § 92-51-29 which states that "a certificate of title shall be eliminated by the division [of vehicles] upon receipt of . . . (a) the owner's affidavit stating that the . . . home has been permanently affixed to a foundation; and (b) payment of $10.00 fee." Thus, the statute speaks of the owner eliminating the title while the regulation speaks of the DOV eliminating it.

By omitting mention of the recording requirement, the regulation essentially ignores KAN. STAT. ANN. § 58-4214(c). It is also inconsistent with another pronouncement of the DOV, the agency that issued it. In implementing the provisions of § 58-4214, the DOV publishes an official affidavit and application form that is accompanied by instructions. A sample application form was one of the exhibits admitted at the hearing.[18] The application is titled "Affidavit of Permanently Affixed Manufacture/Mobile Home and Application to Eliminating [sic] Title" and plainly seeks the information listed in subsection (b). On the Instructions page to the application, it states: "**TITLE**

---

[18] Ex. 8 (Referenced as Form TR-63 effective 07/02). The form application is also available on the KDR DOV website. From the website it appears Form TR-63 was last revised in July of 2008. By statute, the DOV is authorized to adopt regulations and forms to implement § 58-4214. *See* KAN. STAT. ANN. § 58-4215.

10

**IS NOT ELIMINATED UNTIL THIS AFFIDAVIT IS RECORDED IN THE REGISTER OF DEEDS OFFICE.**
(Division of Vehicles, Titles and Registrations Bureau must approve this form FIRST.)"[19] Space is provided on the application form for approval of the *application* by the Kansas Division of Vehicles, Titles and Registrations Bureau.

PHH's reliance on the structure of § 58-4214(b) and the administrative regulation ignores the language in § 58-4214(c) that mandates recording of the application and presumes that title is eliminated when that is done. The administrative regulation, which is silent on recordation of the approved application, is inconsistent with the statute and cannot be preferred over the statute.[20] The Court cannot interpret a regulation in a manner that is inconsistent with the statute that the regulation is meant to implement.[21] KAN. STAT. ANN. § 58-4214(c) therefore trumps the conflicting or inconsistent regulation, § 92-51-29.

PHH's assertion is also contrary to the plain language of § 58-4214(a) that requires the title to be "eliminated pursuant to this *section*" in order for the real estate lien to attach to the mobile home. The presence of the word "section" undermines the idea that rote compliance with the application process in one subsection is sufficient to eliminate a title. It ignores the use of the word

---

[19] *See* http://www.ksrevenue.org/pdf/forms/tr63.pdf. The instructions also note: "This form MUST be approved by the Division of Vehicles, Titles and Registrations Bureau BEFORE being submitted to the County Register of Deeds."

[20] *See Jay Technologies, Inc. v. Sec. of Labor*, 99 F.3d 991, 996 (10th Cir. 1996) (Regulations must be interpreted in manner so as to not conflict with the objectives of the statute that the regulations are meant to implement.).

[21] *See Durrett v. Bryan,* 14 Kan. App. 2d 723, 727, 799 P.2d 110 (1990) (regulation cannot contravene controlling statutory authority and must be read consistent with the statute); *Pork Motel, Corp. v. Kansas Dept. of Health and Environment*, 234 Kan. 374, 378-79, 673 P.2d 1126 (1983) (power of administrative agencies is dependent upon authorizing statutes; rules or regulations of agency that go beyond statutory authority, violate statute, or are inconsistent with the law are void).

"shall" in connection with recording in subsection (c). To conclude otherwise would be to read subsection (c) out of the statute. Because the approved elimination application was not recorded, title was not "eliminated" by its owner as the statute contemplates. As such, PHH is unperfected in the dwelling because the owner's failure to complete the elimination process results in the home not being "subject to a lien as part of the real property where it is located."

The Court concludes that the legal consequences of "elimination" do not occur until the approved application is recorded. The certificate of title may be "cancelled" as referenced in the final sentence of § 58-4214(c), but cancellation is separate from and subsequent to the completion of the elimination process. The Court believes that the most natural reading of this statute is that the recording of the approved application is a condition precedent to elimination. Reading it otherwise renders language in both § 58-4214(a) and (c) superfluous and conflicts with the instruction form issued by the DOV.

PHH's reading of this statute not only ignores the plain language of subsections (a) and (c), but is at odds with the general concept behind the Kansas recording acts. Requiring the recording of the approved application to effect a change in the dwelling's status as a matter of real estate law is entirely consistent with the Kansas statutory scheme pertaining to real estate titles.[22] KAN. STAT. ANN. § 58-2221 (2005) provides that "every instrument" affecting real estate title may be filed for record in the register of deeds office for the county where the real property is located. KAN. STAT. ANN. § 58-2222 provides that every recorded instrument imparts notice to all persons of the contents of the filing from the date of filing. Since at least 1868, Kansas law has been that only recorded

---

[22] *See* § 58-4204(a); *In re Thomas*, 362 B.R. 478 (10th Cir. BAP 2007) (Section 58-4214's process for elimination of title is the exclusive means to change the status of a manufactured home from personal property to a fixture and part of the real estate.).

12

Case 08-05014    Doc# 46    Filed 12/22/09    Page 12 of 17

documents affect the rights of third parties in real property.[23] It is hardly surprising that the Kansas Legislature would require the recording of the elimination application in KAN. STAT. ANN. § 58-4214 to effectuate its clear intent that manufactured homes that are permanently affixed to real property owned by the homeowner become part of the real property for all purposes, including the attachment of a pre-existing real estate mortgage encumbering that property.

Although this Court need only determine the meaning of this statute from an interpretation of its plain text, this interpretation of § 58-4214 is consistent with the legislative history. Appended to PHH's brief were copies of the minutes of a February 2, 2002 meeting of the Kansas Senate's Committee on Financial Institutions and Insurance and several memoranda from various stakeholders, including the Kansas Manufactured Housing Association, the Kansas Bar Association, and the Kansas Bankers Association. The manufactured housing industry's principle concern in requesting this legislation was that title insurance underwriters had begun to refuse to cover title to manufactured homes permanently affixed to real estate because manufactured homes were viewed as personal property.[24] The bill that became § 58-4214 was formulated by the KMHA working in concert with the DOV, the Kansas Bankers Association and the Kansas Bar Association. While the Legislature could have statutorily declared permanently affixed manufactured homes to be real property for all purposes, it did not.[25] Instead, like many other states, it chose to provide for the elimination of the certificate of title to treat permanently affixed manufactured homes as part of the

---

[23] GEN. STAT. 1868, ch. 22, § 19.

[24] The Executive Director of the Kansas Manufactured Housing Association notes that "[t]itle insurance insures the transfer of ownership of real estate not personal property." Dkt. 42-1, p. 8.

[25] *See* § 58-4204(a) (manufactured or mobile homes deemed to be personal property for purposes of titling and perfecting a security interest).

13

real estate. The Court concludes that recordation of the approved application to eliminate title in the real estate records (Office of Register of Deeds) is absolutely necessary to satisfy title insurance standards.[26]

The recording requirement is consistent with title elimination statutes enacted in Colorado[27] and Washington,[28] from which the Kansas statute is patterned.[29] The Washington law specifically defines "eliminating the title" to mean "cancel[ling] an existing title . . . *and recording* the

---

[26] As noted by respected Wichita real estate attorney Roger D. Hughey in his letter to the Legislative Counsel for the Kansas Bar Association in support of the legislation now codified as § 58-4214, "The key to solving the problem is to define a permanently attached manufactured home as real estate and to adopt a simple procedure to evidence the fact. The recording of an affidavit of affixture with the Register of Deeds of the county where the home site is located, combined with the cancellation of the certificate of title . . ., would remove any jeopardy to the title insurance issuer from insuring the full value of the real estate and home as one entity." Dkt. 42-1, p. 6. Similarly, the Kansas Manufactured Housing Association recognized the necessity of recordation: "When all requirements are met the Division approves the application for elimination and the approved application is then recorded at the register of deeds in the county in which the home is affixed to the real property. The manufactured home is now considered real property." Dkt. 42-1, p. 9.

[27] COLO. STAT. ANN. § 38-29-101 *et seq.* The Colorado law refers to a "purging" of the manufactured home title and a certificate of permanent location. *See* § 38-29-118(2) providing that the manufactured home shall become real property upon filing and recording of the certificate of permanent location in accordance with § 38-29-202. Section 38-29-202(b) provides that if a certificate of permanent location accompanies an application for purging the title pursuant to § 38-29-118(2), the certificate shall be filed with the authorized agent for the county or city and county in which the manufactured home is located.

[28] REV. CODE WASH. STAT. ANN. § 65.20.010 *et seq.* Section 65.20.010 describes the legislative purpose as providing a statutory process to make manufactured homes real property by elimination of the title when the home is affixed to land. Section 65.20.030 provides, "[i]f title is eliminated under this chapter, the manufactured home shall be treated the same as a site-built structure and ownership shall be based on ownership of the real property through real property law. . . . if the title has been eliminated under this chapter, a separate security interest in the manufactured home shall not exist, and the manufactured home shall only be secured as part of the real property through a mortgage . . ."

[29] The title elimination legislation was based upon existing laws in Colorado and Washington. *See* Dkt. 42-1, p. 8.

14

appropriate documents *in the county real property records pursuant to this chapter.*"[30] Like Kansas, Washington requires the homeowner to make application for elimination of title with an application containing statutorily specified information.[31] In Washington, the department of licensing approves the application for elimination of title when all application requirements are satisfied. Section 65.20.050 of the Washington law contains the recording requirement and is similar to Kansas' version, § 58-4214(c):

> The department shall approve the application for elimination of the title when all requirements listed in RCW 65.20.040 have been satisfied and the registered and legal owners of the manufactured home have consented to the elimination of the title. After approval, *the department shall have the approved application recorded in the county or counties in which the land is located and on which the manufactured home is affixed.*
>
> *The county auditor shall record the approved application*, and any other form prescribed by the department, *in the county real property records.* The manufactured home shall then be treated as real property as if it were a site-built structure. . . .
>
> *The department shall cancel the title after verification that the county auditor has recorded the appropriate documents . . . The title is deemed eliminated on the date the appropriate documents are recorded by the county auditor.*[32]

KAN. STAT. ANN. § 58-4214(c) is consistent with its Washington counterpart and distinguishes the DOV's act of "cancelling" an existing title from the "elimination" of title upon recording. Sequentially, the DOV "also shall cancel" an existing title for the manufactured home, after its

---

[30] REV. CODE WASH. STAT. ANN. § 65.20.020(3) [Emphasis supplied].

[31] *Id.* at § 65.20.040.

[32] Section 65.20.050. The Washington law places the onus on the department of licensing to "have the approved application recorded," and verify recordation before it cancels the title. It is the recording of the approved application by the county auditor in the real property records, however, that effectuates the elimination of title.

15

elimination.[33] In contrast to Washington's statute, § 58-4214(c) does not place the burden of recording the approved application on the DOV. Nor does the Kansas statute provide a mechanism for the DOV to verify the recordation before it cancels the title.[34]

The Court concludes that failure to record the approved application prevents the title from being eliminated and that the Trustee should have judgment on his complaint avoiding PHH's purported lien in the Debtors' home and preserving it for the benefit of the estate as set forth in § 551.[35] At trial, the Trustee noted that he only seeks a division of the funds he has collected since the Court entered its payment procedure order on March 18, 2008.[36] The parties have stipulated that the dwelling contributes 63.53 per cent of the value of the homestead while the land to which it is affixed contributes 36.47 per cent. The parties also believe that the value of the homestead exceeded the principal balance of PHH's debt at the date of the petition. The Court cannot determine what

---

[33] Section 58-4214(c).

[34] The Kansas statute provides in § 58-4214(c) that, "[u]pon such recording, the certificate of title *shall be presumed to be eliminated*." The use of the word "presumed," as opposed to "deemed" as is used in Washington's statute may cast doubt over whether recording is a necessary element of elimination. The Trustee contends that this language creates a conclusive presumption that is incapable of being rebutted. As he notes in his brief, a conclusive presumption (sometimes referred to as an "irrebuttable presumption") is not really a presumption at all, but is a rule of substantive law. Dkt. 40, p. 7-8. It is not subject to Fed. R. Evid. 301. *See generally,* Wright and Graham, 21B Fed. Prac. & Proc. § 5122.1 and 5124 (2d ed. 2009). Here, however, because it is stipulated that the approved application was never recorded with the register of deeds, no "presumption" arises and the Court need not reach the issue of whether § 58-4214(c) creates a rebuttable evidentiary presumption or a conclusive presumption. Nor is it necessary to determine if PHH rebutted the presumption if this Court were to consider subsection (c) as creating an evidentiary presumption since it concedes there was no recording. PHH's position is that recording is not required to eliminate the title, a matter of statutory interpretation of which the Court has already disposed.

[35] The Trustee abandoned his § 550(a) value remedy at trial.

[36] Dkt. 9.

16

the principal balance of the loan was at filing. The Court does find that the Trustee has received from the debtors from the date of the payment procedure order to the date of trial 17 payments, five in the amount of $615.36 and 12 in the amount of $640.72, for total receipts through July 21, 2009 of $10,765.44. Using the allocation percentages stipulated by the parties, the Trustee is entitled to retain $6,839.28 and should refund to PHH $3,926.16.

The Trustee should further be allowed to retain and preserve for the benefit of the estate a lien in the dwelling of a value and amount not to exceed 63.53 per cent of the principal balance owed PHH on its note as of March 18, 2008. The Trustee shall apply the $6,839.28 referenced above first to interest accruing on that lien at the note rate and the remainder of the payment to principal. Thereafter, the Trustee may collect a like percentage of each monthly payment from July 21, 2009 and shall apply it in like fashion until the estate's proportionate lien shall have been paid in full.[37]

A Judgment on Decision shall be entered this day.

# # #

---

[37] The Court understands that this will likely impose a burden on the Debtors who will now be faced with making two separate house payments each month, but the Court can see no other means of protecting all of the parties' interests as they now appear. It may be that PHH can acquire the avoided lien from the Trustee for cash, reuniting the surface and dwelling liens and enabling the Debtors to deal with only one residential creditor.

17